UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BENNIE A. RICE, III,

      Plaintiff,

v.

                                       Case No. 1:25-cv-652
                                       Hon. Paul L. Maloney

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant,

_____/

## REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (Commissioner) which denied his claim for disability insurance benefits (DIB).

Plaintiff filed an application for DIB on November 15, 2022, alleging a disability onset date of October 27, 2018.  PageID.46.[1]  Plaintiff completed the 12th grade and had past relevant work as a home attendant, cleaner and service writer.  PageID.55, 291. Plaintiff identified a number of disabling conditions.  PageID.290.  At the administrative hearing, plaintiff's counsel stated that plaintiff has "well over 50 conditions" which include headaches, heart conditions, lung conditions, orthopedic conditions, and necrosis of bones in his lower extremities.  PageID.69.  An

---

[1] The ALJ noted that "[t]he claimant has had a prior administrative hearing and decision (Ex. B1A)" and that,

> Per the requirements of *Dennard v. Secretary of Health and Human Services*, 907 F.2d 598 (6th Cir. 1990), *Drummond v. Commissioner of Social Security*, 126 F.3d 837 (6th Cir. 1997)), and Acquiescence Rulings 98-3(6) and 98-4(6), I have taken legitimate consideration of the previous administrative finding in rendering this decision. To that extent, I have taken into account all applicable rules and regulations, as well as all new and material evidence, with regard to this consideration.

PageID.46.

1

administrative law judge (ALJ) reviewed plaintiff's claim *de novo* and entered a written decision denying benefits on June 10, 2024.  PageID.46-57.  This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I.    LEGAL STANDARD

"The federal courts review the Commissioner's factual findings for substantial evidence and give fresh review to its legal interpretations."  *Taskila v. Commissioner of Social Security*, 819 F.3d 902, 903 (6th Cir. 2016).  This Court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence.  42 U.S.C. § 405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990).  "[T]he threshold for such evidentiary sufficiency is not high."  *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019).  "Substantial evidence, this Court has said, is more than a mere scintilla.  It means — and means only — such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id*. (internal quotation marks and citations omitted).

A determination of substantiality of the evidence must be based upon the record taken as a whole.  *Young v. Secretary of Health and Human Services*, 925 F.2d 146 (6th Cir. 1990).  The scope of this review is limited to an examination of the record only.  This Court does not review the evidence de novo, make credibility determinations, or weigh the evidence.  *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).  The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record.  *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988).  "If the [Commissioner's] decision is supported by substantial evidence, it must be affirmed even if the

reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 286 (6th Cir. 1994).

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §404.1505; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the [Commissioner] to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional

capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II. ALJ's DECISION

Plaintiff's claim failed at the fifth step of the evaluation. At the first step, the ALJ found that plaintiff has not engaged in substantial gainful activity since the alleged onset date of October 27, 2018, and meets the insured status requirements of the Social Security Act through December 31, 2026. PageID.48. At the second step, the ALJ found that plaintiff has the following severe impairments: coronary artery disease, status post triple bypass; arterial aneurysms; migraine headaches; Chronic Obstructive Pulmonary Disease (COPD); dysfunction of the right knee; degenerative disc disease; GERD; hidradenitis suppurativa; obesity; osteomyelitis; hyperlipidemia; osteoarthritis; persistent depressive disorder; generalized anxiety disorder. PageID.49.

At the third step, the ALJ found that plaintiff does not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. *Id*. The ALJ decided at the fourth step that:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except he can occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; can frequently stoop, kneel, crouch, and crawl; can never work at unprotected heights nor around moving mechanical parts; can never work in extreme heat, extreme cold, humidity, wetness, nor have concentrated exposure to atmospheric conditions, as defined by the Selected Characteristics of Occupations; and perform simple, routine tasks, and simple work-related decisions; can tolerate occasional changes in the work setting.

PageID.50. The ALJ also found that plaintiff is unable to perform any past relevant work. PageID.54.

At the fifth step, the ALJ determined that plaintiff could perform a significant number of sedentary, unskilled jobs.  PageID.55-56.  Based on the testimony of a vocational expert (VE), the ALJ found that plaintiff could perform the requirements of occupations in the national economy such as food checker (108,400 jobs), callout operator (1,900 jobs), and telephone solicitor (53,400 jobs).  PageID.56.  Accordingly, the ALJ determined that plaintiff was not under a disability, as defined in the Social Security Act, at any time from October 27, 2018 (the alleged onset date) through June 10, 2024 (the date of the decision).  PageID.56.

### III.    DISCUSSION

Plaintiff raised two errors on appeal.[2]

**A. The ALJ errs in analyzing plaintiff's pain, particularly his knee-related pain and his need to elevate.**

While it is well-settled that pain may be so severe that it constitutes a disability, a disability cannot be established by subjective complaints of pain alone.  "An individual's statement as to pain or other symptoms shall not *alone* be conclusive evidence of disability."  *Cohen v. Secretary of Department of Health and Human Services*, 964 F.2d 524, 529 (6th Cir. 1992), quoting 42 U.S.C. § 423(d)(5)(A) (emphasis added).  Rather, objective medical evidence that confirms the existence of pain is required.  *Shavers v. Secretary of Health and Human Services*, 839 F.2d 232, 234-35 (6th Cir.1987).

"Where the symptoms and not the underlying condition form the basis of the disability claim, a two-part analysis is used in evaluating complaints of disabling pain."  *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 247 (6th Cir. 2007).

First, the ALJ will ask whether the there is an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's

---

[2] The Court notes that plaintiff's counsel did not follow this Court's administrative order regarding citation to the electronic record using the "PageID." format.  This failure prevents the Court from accessing the cited pages from the electronic record. Counsel is reminded to review the Court's orders and rules regarding proper citation's format.

symptoms. Second, if the ALJ finds that such an impairment exists, then he must evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities. Relevant factors for the ALJ to consider in his evaluation of symptoms include the claimant's daily activities; the location, duration, frequency, and intensity of symptoms; factors that precipitate and aggravate symptoms; the type, dosage, effectiveness, and side effects of any medication taken to alleviate the symptoms; other treatment undertaken to relieve symptoms; other measures taken to relieve symptoms, such as lying on one's back; and any other factors bearing on the limitations of the claimant to perform basic functions.

*Id*. (internal citations omitted). *See* 20 C.F.R. § 404.1529 ("How we evaluate symptoms including pain").

Plaintiff met the first part of the analysis because he has underlying medically determinable physical impairments that could reasonably be expected to produce pain. As discussed, the ALJ found that plaintiff had severe impairments which included: dysfunction of the right knee; degenerative disc disease; obesity; osteomyelitis; and osteoarthritis. PageID.49. The ALJ addressed the second part of the analysis by performing a review of plaintiff's medical record and medical opinions. PageID.37-41. The issue before the Court is whether the ALJ's evaluation of the medical evidence was adequate.

Plaintiff's brief is focused on his knee pain and the functional limitations related to that pain. The ALJ addressed this claim as follows:

In February 2020, the claimant presented for evaluation of bilateral knee pain; the claimant reported that the pain was constant and of an achy, sharp, dull, burning, and throbbing nature, increased with walking, standing, sitting, going up and down stairs, and getting up from a seated position. Examination was remarkable for trace effusion of the left knee and small effusion of the right knee, as well as minimal crepitus with range of motion. Imaging showed avascular necrosis in both the distal femurs and proximal tibias without collapse or significant degenerative changes. At that time, the claimant was referred to an orthopedic surgery as a potential candidate for surgical intervention (Ex. B1F/11-14). In July 2022, the claimant presented to the surgical clinic with reports of worsening bilateral knee pain with swelling. Examination was remarkable for mild joint effusion on the right (but no effusion on the left) and abnormal range of motion without pain. Imaging showed faint sclerosis in the distal femur and proximal tibia and trace knee joint effusion

on the right and left. An updated MRI of the claimant's right knee in May 2022 had shown extensive avascular necrosis of the distal femur and proximal tibia, moderate joint effusion; imaging of his left knee at that time showed the sequela of osteonecrosis of the distal femur and proximal tibia, as well as nonspecific periosteal edema along the distal femur and proximal tibia (Ex. B1F/14-17). Subsequent physical examinations have been remarkable for an antalgic gait favoring the right, positive McMurray's testing, medial joint line pain, lateral joint line pain, patellar crepitus, and a restricted and painful range of motion in the knees. (Ex. B2F) The claimant consulted with another orthopedic specialist in September 2022 for his ongoing knee pain; examination was normal, but imaging showed minimal pointing of the tibial spines and minimal medial joint space collapse. Conservative treatment was recommended as further management of his symptoms (Ex. B3F). The claimant received Euflexxa injections of the knees in 2023 (Ex. B15F) but has continued to exhibit a decreased range of motion and tenderness in both knees (Ex. B17F). In November 2023, a CT of the claimant's abdomen and pelvis showed evidence of avascular necrosis of the femoral heads, which may be seen with chronic steroid usage (Ex. B22F/19). (Ex. B4F, B6F, B17F, B18F).

PageID.52-53.

The ALJ addressed plaintiff's symptoms as follows:

Although the claimant has alleged both physical and mental impairments with disabling consequences, physical examinations suggest that the claimant was capable of work activity consistent with the residual functional capacity adopted herein. Corresponding records from Exhibits B1F through B26F showed no radiographic or clinical results reflecting debilitating pathology of the spine, knees, or hips. Despite their complaints and demonstrated occasional abnormal range of motion and tenderness, their general appearance was often normal and they have treated with conservative measures. Additionally, the claimant has reported activities inconsistent with the activity level he has reported to the agency – for exampling in February 2020, the claimant reported shoulder pain after snow blowing (Ex. B4F/267) and in November 2020, he reported rib pain after a fall from his daughter's razor (ex. B4F/238).

PageID.54.

Based on this record, the Court concludes that the ALJ failed to adequately address plaintiff's alleged symptoms related to his knees. The relevant time period for plaintiff's claim is from October 27, 2018 through June 10, 2024. The ALJ's finding that plaintiff is not disabled is based, in part, on plaintiff's daily activities in February and November 2020. PageID.54. While

this is within the relevant time frame, the record reflects that plaintiff's medical condition deteriorated sometime after November 2020. *See* PageID.52-53.

Medical records from July 8, 2022, indicate that plaintiff had avascular necrosis[3] of bilateral femur and tibia and that he was not a candidate for surgery because "it would be too extensive":

> We discussed that there are things that he can do to prevent any collapse of the bones including keeping his weight down, smoking cessation and avoiding any high impact activity. I recommended an exercise bike and swimming for activity. I explained that if the bones do collapse then the only surgical intervention would be a knee replacement. I also recommended calcium 1600mg and vitamin D 400mg supplements. I explained that he would not be a candidate for any microfracture because it would be too extensive.

PageID.423.

On July 18, 2022, PA Lewandowski made a number of diagnoses related to "Extensive avascular necrosis of the distal femur and proximal tibia". PageID.432. The plan of care for the right knee included ice and "[e]levate as needed". PageID.433.

On September 2, 2022, Phillip J. Dabrowski, DO, developed the following plan:

> After discussion of the diagnosis and treatment options, it was elected to proceed with conservative treatment. Proceed with home exercise plan and rest, ice, compression, elevation. Risks and complications of drug therapy were discussed. All questions were answered and the patient was agreeable. Discussed exercise plan while avoiding high-impact exercise to help prevent fractures and/or further osteochondral damage. He was encouraged to quit smoking to help with vasculature and healing.

PageID.474 (emphasis omitted).

In the Fall of 2023, PA Lewandowski treated plaintiff's knees with injections. At that time plaintiff was taking Percocet tablets every six hours for pain. *See* PageID.1510-1514. It also appears that plaintiff had an injection on December 5, 2023. *See* PageID.1755.

---

[3] "Avascular necrosis is the death of bone tissue due to a lack of blood supply." *Dotson v. Commissioner of Social Security*, No. 1:20-CV-405, 2021 WL 301950, at *3 (S.D. Ohio July 17, 2021) (fn. 3) (citing www.mayoclinic.org).

8

Upon review of the record, the Court concludes that the ALJ did not adequately evaluate plaintiff's knee condition commencing in July 2022.  As of July 8, 2022, the medical records indicate evidence of extensive avascular necrosis of the distal femur and proximal tibia with a treatment plan of elevating and icing the legs.  The record indicates that surgical intervention was not an option at this time because it would be too extensive and that plaintiff faced the prospect of a total knee replacement in the future.   As discussed, the ALJ did not adequately address the condition of plaintiff's knee commencing in July 2022.   An ALJ "must articulate, at some minimum level, his analysis of the evidence to allow the appellate court to trace the path of his reasoning." *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995). *See Stacey v. Commissioner of Social Security*, 451 Fed. Appx. 517, 519 (6th Cir. 2011) (quoting *Diaz*). "It is more than merely 'helpful' for the ALJ to articulate reasons . . . for crediting or rejecting particular sources of evidence. It is absolutely essential for meaningful appellate review." *Hurst v. Secretary of Health and Human Services*, 753 F.2d 517, 519 (6th Cir. 1985).  Accordingly, this matter should be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g).  On remand, the Commissioner should evaluate plaintiff's knee condition as it existed between the time frame of July 8, 2022, through June 10, 2024.

### B. The ALJ further errs by failing to account for sciatica or by failing to include any upper extremity limitations in the RFC.

Plaintiff also contends that the ALJ's RFC failed to address his upper extremity limitations.  At the administrative hearing, plaintiff testified that "I drop things here and there." PageID.78.  In his brief, plaintiff refers to chronic neck pain in November 2022.  John J. Wald, M.D., examined plaintiff on November 7, 2022, and noted that plaintiff had "[c]hronic cervicalgia, worsening with radicular symptoms into the arms, tried and failed therapy and oral medications with no benefit."  PageID.542, 546 (emphasis omitted).  Plaintiff raises a general objection that

9

"the ALJ was due to assess how things like sciatica and upper extremity limitations layer on top of other conditions and affect the RFC."  Plaintiff's Brief at PageID.2868.

As discussed, the ALJ's RFC limited plaintiff to work at the sedentary exertional level, *i.e.*, work which "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools."  20 C.F.R. § 404.1567(a).  The ALJ considered medical opinions which addressed plaintiff's use of his upper extremities.  In an opinion signed on August 16, 2023, consultative examiner Barbaa Serini, D.O. identified a number of impairments related plaintiff's musculoskeletal system and found that plaintiff's ability to "push and/or pull in upper extremities" was unlimited, except for "lift and/or carry", *i.e.*, "Frequent lifting limited to 5lbs."  PageID.127, 129, 134.  On reconsideration, in an opinion signed on December 28, 2023, consultative examiner Thomas Chiambretti, D.O., made the same findings.  PageID.142, 147.  The record reflects that both Dr. Serini and Dr. Chiambretti reviewed the records related to the November 7, 2022, examination.  *See* PageID.131, 144.  The ALJ considered this evidence from these doctors related to plaintiff's upper extremities. *See* PageID.54.  Based on this record, the ALJ considered plaintiff's upper extremity limitations and accounted for that impairment by limiting him to sedentary work. Accordingly, this claim of error should be denied.

### IV.    RECOMMENDATION

For the reasons discussed, I respectfully recommend that the Commissioner's decision be **REVERSED and REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g).  On remand, the Commissioner should evaluate plaintiff's knee condition as it existed between the time frame of July 8, 2022, through June 10, 2024.

Dated: June 30, 2026

/s/ Ray Kent
Ray Kent
United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).